found it to have been made in good faith. Under the doctrine of Suravitz v. Ins. Co., supra, the question was properly for the consideration of the jury.

In a number of other assignments error is alleged in the admission of evidence of acquaintances that the insured was apparently in good health, and was able to attend to his business during the spring and summer of 1913. As one of the questions to be determined by the jury was whether the insured was in good health, so far as he knew or believed, when he made his application, it was competent, as having some bearing upon his own good faith and credibility, to show by witnesses, who saw him about that time, that, to ordinary observation, and to all outward appearance, he was in good health.

There is no merit in the fifteenth assignment, which alleges error in admitting, against objection, plaintiff's testimony that at the time she signed the proofs of death, she had a nervous breakdown, and did not examine the papers for the purpose of correcting errors therein. Whether she did so or not, is immaterial, as there is no controversy as to the statements contained in the proofs of death.

The assignments of error are all overruled, and the judgment is affirmed.

---

# Flynn *v.* Parker et al., Appellants.

*Equity—Partition—Wills—Husband and wife—Tenants by entireties—Widow's election—Estoppel.*

A husband and wife held title to certain real estate as tenants by entireties. The husband died leaving a will wherein he made his wife tenant for life of certain of the real estate with remainder to his daughter. The wife acquiesced in the provisions of the will for five years and thereafter died intestate. It appeared that at the time when the wife acquiesced in the provisions of the will she was ignorant of her rights to the entire real estate; that she was a

paralytic and could not have informed herself. Upon her death, a son claiming that the will did not affect the rights of the wife in the estate which she and her husband held as tenants by the entireties, brought suit in equity for partition of such real estate and claimed a child's share therein. *Held,* the court properly awarded the relief prayed for.

Argued Oct. 11, 1916. Appeal, No. 94, Oct. T., 1916, by defendants, from decree of C. P. Allegheny Co., Oct. T., 1913, No. 1965, in equity, for plaintiff on bill in equity for partition, in case of Eugene J. Flynn v. Margaret Flynn Parker and Edward C. Parker. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Bill in equity for partition.

On final hearing REID, J., filed the following opinion:

First. E. P. Jones and Esther W. Jones, his wife, by deed dated August 11, 1884, and recorded in the office of the recorder of deeds of Allegheny County, conveyed in fee simple to Charles Flynn and Catherine Flynn, his wife, two certain lots of ground known as lots Nos. 10 and 11 in a plan called E. P. Jones' plan, the said real estate being situate in the 5th (formerly 13th) ward of the City of Pittsburgh, Allegheny County.

Second. Said E. P. Jones and wife also, by deed dated September 29, 1886, and recorded January 25, 1887, in the recorder's office of Allegheny County, conveyed in fee simple to said Charles Flynn and Catherine Flynn, his wife, Lot No. 12 in said E. P. Jones' plan.

Third. That said Charles and Catherine Flynn conveyed to Ernest F. Eckert, by deed dated June 23, 1903, recorded September 1, 1903, in the recorder's office of Allegheny County, all of Lot No. 10 and part of Lot No. 11 in said E. P. Jones' plan, leaving in the said Charles and Catherine Flynn the title to the remainder of Lot No. 11 and the whole of Lot No. 12.

Fourth. That Charles Flynn died on the 4th day of

February, 1905, leaving to survive him his wife, Catherine.

Fifth. That Catherine Flynn died on the 22d day of January, 1911, intestate, leaving to survive her, Eugene J. Flynn and Margaret Flynn (now Margaret Flynn Parker), the said Eugene J. Flynn being the plaintiff in this cause, and Margaret Flynn Parker, with her husband, the defendants.

Sixth. That subsequent to the death of Catherine Flynn, by two separate deeds, dated respectively September 1, 1911, and September 23, 1911, and recorded in the recorder's office of Allegheny County, the plaintiff and defendants herein conveyed to Ernest F. Eckert a portion of Lot No. 11 in said E. P. Jones' plan, leaving out of the lots conveyed to Charles and Catherine Flynn the real estate described in the first paragraph of plaintiff's bill, and which the plaintiff claims the right to have partitioned between him and his sister.

Seventh. Upon this real estate as described in said first paragraph, there are erected two brick dwellings known as Nos. 2321 and 2323 Wylie Avenue.

Eighth. Charles Flynn, father of plaintiff and defendant, left a will, registered in the register's office of Allegheny County, containing (inter alia) the following provisions:

"Tertio. All the rest, residue and remainder of my estate, whatsoever and wheresoever, I will, devise and bequeath as follows:

"A life tenancy to my widow, Catherine Flynn (nee Sheridan), with remainder over to our two children.

"The two brick dwelling houses and the lots whereon they stand at Nos. 2321 and 2323 Wylie Avenue, Pittsburgh, Pennsylvania, conveyed to me under deeds respectively recorded in the Allegheny Recorder's Deed Book 576, pages 278 to 280, and Volume 557, page 320, etc., and all my personalty excepting and reserving only a $1,000 legacy to my son Patrick Eugene Flynn, to my

devoted and most helpful daughter, Margaret Flynn, absolutely."

Ninth. The above mentioned real estate was all the real estate in which Charles Flynn had any interest at the time of his death.

Tenth. No formal election to take under or against the will of her husband was ever made by Catherine Flynn.

Eleventh. Catherine Flynn solicited her husband to make a will of the tenor of the one in evidence in this case. On more than one occasion she expressed herself as satisfied with it and stated that she wished her daughter, Margaret, to have all the real estate.

Twelfth. Catherine Flynn, through her said daughter, invested the sum of $2,000 of the money left by her husband, in a mortgage and received the income therefrom, as well as the income from another $2,000 mortgage made in the testator's lifetime, and also invested some of that money in building and loan stock. There was no attempt by her to claim the corpus of this fund, and she apparently limited her use of it to that of a life-tenant only; nor did she make a will or convey or attempt to convey the real estate after the making of her husband's will.

Thirteenth. Catherine Flynn, from her husband's death until her own, remained in possession of the real estate, and, through her daughter, Margaret, collected the rentals, out of which she paid repairs, taxes, etc., and with this income and that referred to in foregoing finding, maintained and clothed her daughter and herself. She had lived in the property for a long time before the husband's death and continued so to do for about six years after his death.

Fourteenth. At the time of the execution of the will of Charles Flynn, and for a number of years prior thereto, and continually up until her death, Catherine Flynn was a helpless invalid. She was paralyzed in the entire right side, unable to care for herself, subject to repeated

attacks of hysterics, and unable to converse intelligibly,. except with a few persons (her daughter Margaret and a nurse, Mrs. McElfresh, being among them), who could understand and interpret her whisperings or mutterings. It was necessary at times to restrain her tendency to hysteria by frightening or threatening her. For at least six months before her death she was mentally incapable of transacting any business.

Fifteenth. For a period prior to the six months above referred to, and extending back to the time of the making of Charles Flynn's will, Catherine Flynn, though physically totally incapacitated, yet had mental power to understand her domestic and business affairs. By reason, however, of her tendency to hysterics, and nervousness in the presence of strangers her mental grasp was somewhat impaired.

Sixteenth. There is no evidence whatever to indicate that Catherine Flynn, when she importuned her husband to make a will, expressed herself as satisfied with it, or apparently accepted some of its provisions, knew or was informed by anyone that she, upon her husband's death, should she survive, would become the absolute owner of all the real estate; and the court therefore finds that she at no time had such knowledge.

Seventeenth. There was no evidence whatsoever to indicate that Catherine Flynn, when she apparently acquiesced in her husband's provision of a life estate in his personalty, knew or had been informed as to the effect of the intestate law, should she have wished to take against the will, and the court therefore finds that she at no time before accepting under said will, had knowledge of her rights.

Eighteenth. It affirmatively appears from the defendants' testimony that when Catherine Flynn spoke of the will of her husband, she was absolutely ignorant of her rights. She expressed her fear, if the will should not be made as she wished, that the plaintiff "would come in and claim an equal share" with her and her daughter,

Margaret. She also expressed her pleasure at the making of her will, because, if it had not been made her son "would have caused the property to be sold and she would have had no income, except what money she would have in the bank," and said, "if he [her son] would come in, where would you or I get our share? What would keep me?"

Nineteenth. In executing the deed referred to in the sixth of the foregoing findings, Mrs. Margaret Parker did not thereby intend to admit, or recognize, that her brother, the plaintiff—who made a separate deed—was entitled to a share in the real estate described in the bill.

### CONCLUSIONS OF LAW.

First. By the conveyance above recited from E. P. Jones and Esther W. Jones, his wife, to Charles and Catherine Flynn, there was created in the said Charles Flynn and Catherine Flynn, his wife, an estate of entireties, and the said Charles and Catherine Flynn held the real estate described in said conveyances as tenants by the entireties.

Second. Upon the death of said Charles Flynn, on February 4, 1905, the title to the real estate mentioned in the first paragraph of the plaintiff's bill of complaint vested in Catherine Flynn, wife of said Charles Flynn, as an entirety.

Third. Upon the death of Catherine Flynn, on January 29, 1911, intestate, the real estate described in the first paragraph of plaintiff's bill descended to and became vested in the plaintiff, Eugene J. Flynn, and Margaret Flynn (now Margaret Flynn Parker), as her only children and heirs at law, as tenants in common.

Fourth. The court having found as a fact that Catherine Flynn was not informed and did not know what her rights under the law were when she alleged by her expressions, before and after the making of the will of her husband, Charles Flynn, and her actions in apparently

accepting the provisions thereof, it follows that neither she nor her heir, Eugene Flynn, was estopped by her expression or conduct.

Fifth. The equitable doctrine of election and estoppel cannot be applied to this case, and plaintiff is not estopped from asserting his rights in the real estate of his mother, described in the bill of complaint.

Sixth. Plaintiff is entitled to the partition prayed for in his said bill, and same must therefore be sustained.

### OPINION.

The facts of the case are fully set forth in the court's "Findings of Fact" filed herewith, and it is, therefore, unnecessary to restate them here at length.

Mrs. Catherine Flynn, a bed-ridden and paralyzed woman, who could express herself only in whispers or mutterings which but few could understand (or by nods or shakes of the head to indicate assent or dissent), was the owner, with her husband, Charles Flynn, of the real estate described in the bill. They admittedly held the estate as tenants by entireties, and ordinarily, upon Charles Flynn's death, his wife, who survived, would under our law have become the absolute owner of the property.

The plaintiff, Eugene Flynn, had been absent from home for years, and there was some testimony to the effect that his parents did not regard him as a dutiful son. There was an attempt made to prove that he was dissipated, and that he indulged in the excessive use of intoxicants. This was denied by plaintiff and witnesses called in his behalf. Aside from his wandering disposition, if it be material, which we do not deem it to be, the court was not satisfied that there was any sufficient ground for excluding him from the inheritance. His sister, Margaret, the defendant, remained at home and gave continued and faithful service to the parents.

The theory of the defendant is that the will made by

the father some time before his death was prepared and executed at the mother's request, assented to by her, that she took under it a life estate in her own realty and in her husband's personalty; that she, by her expressions of satisfaction made after the execution of the will, and continued after her husband's death, with her statement that she wanted Margaret to have all the realty, estopped herself, and as a consequence, her son, the plaintiff, from any participation as an owner in that realty.

While it may be that had the mother known her rights, there might be such estoppel, even as against a tenant by the entireties, it can only be established by affirmative proof of such knowledge, and that a full, fair and intelligent realization of those rights was had before the owner can be deprived of a valuable and absolute estate.

The court has carefully scrutinized all the testimony, and our findings of fact fully present the results. Not a word is to be found in all the transcript to indicate that the mother knew or had ever heard of her title as a tenant by the entireties in the land which she seems to have considered to be her husband's sole property. We have embodied in our eighteenth finding of fact the defendant, Mrs. Parker's, own statement of the fear the mother expressed that unless her husband made the will as she desired, her son would be able to compel a sale of the realty—thus indicating that she did not know that she (should she survive) would be the absolute owner, and in a position to protect herself or provide for her daughter.

There is not a word to show that she knew or had ever heard that as against her husband's provision for her of a life estate in his money, that she could, if she wished, claim the absolute share of his personal estate provided by the intestate law.

Even the confidential adviser who drew the will in evidence testified that he did not know of the existence of the tenancy by the entireties, and as a consequence the will inaccurately states the deeds mentioned there as conveying title to the husband alone. Under all the cir-

cumstances it seems quite probable that the husband did not know he was attempting to dispose of real estate which was not his to devise.

Under our findings of fact it is not material to determine what, if any, estate the wife took under the will in question. There are present in it two apparently inconsistent provisions in clause Tertio. Counsel for plaintiff contended that the paragraph attempting to give a life tenancy to the widow, with remainder to the two children, is nullified by the succeeding paragraph which gives all the property, real and personal, absolutely, to Margaret, excepting a legacy of $1,000 to the son. They, therefore, maintain that the wife in fact took nothing under the will.

The authorities upon the subject, especially in the case of a widow or a married woman, beyond question rule that without a knowledge or disclosure of her rights and an appreciation of the value of the property surrendered or received through the medium of such election or estoppel, there can be no valid election, or an estoppel which will be enforced.

Our "Conclusions of Law" cover the various propositions touched upon here, and we shall, therefore, not discuss them further.

The complainant's bill must be sustained and partition be allowed as prayed for.

Let a decree in accordance herewith and with the findings of fact and conclusions of law be prepared.

On rehearing REID, J., filed the following opinion:

This is a bill to compel partition of certain real estate in the Fifth Ward, of the City of Pittsburgh, of which complainant avers he is the owner of an undivided one-half interest in common with his sister, Margaret Flynn Parker, one of the respondents—his title being derived by descent from Mrs. Catherine Flynn, their mother.

Charles and Catherine Flynn, the parents of complainant, and Mrs. Parker, in 1884 and 1886 purchased the real estate sought to be partitioned from E. P. Jones,

the deeds vesting a title in them by entireties.  On February 4, 1905, Charles Flynn died, having made the will dated December 28, 1904, a copy of which is appended to respondents' answer.  Catherine Flynn died January 22, 1911.

Complainant maintains that as the title was taken by entireties, the will of Charles Flynn could not deprive his mother of her right to an absolute estate in the property upon the death of her husband, and that as she did not devise the property, as she had a right to do, it went in equal shares to the complainant and Mrs. Parker, the parties hereto.

In answer to this contention, it is alleged that the will of Charles Flynn was made by him at the request of his wife, and that she accepted the life estate given to her therein, and adopted its provisions as her own will, so far as a final disposition of the property was concerned; that she was, therefore, estopped, and that her son, the complainant, who claims through her as against the provisions of his father's will, is also estopped.  It is apparent that if the mother were not estopped by her accepting her husband's will, the complainant could not be prevented from asserting his right.

This case was decided once before, and the findings of fact, conclusions of law and opinion of the court filed September 4, 1914, fully presented the basis for the decision which held that the complainant was entitled to partition.

The conclusions then reached by the court were chiefly based upon the theory that Catherine Flynn, through whom complainant claims title, was not aware of her rights when she procured or assented to the making of the will by her husband whereby her property was devised by him as though it were his own.

Before the disposition of the exceptions filed by respondents to the courts' findings of fact and conclusions of law, respondents presented a petition to the court asking for a rehearing upon the facts on the

ground that important evidence bearing upon the question of such knowledge which had not been produced upon the original hearing would be presented if a rehearing were granted. Such rehearing was allowed, and on May 25, 1915, additional testimony was taken.

In addition to the matters previously presented, the question of an accounting for the rentals derived from the property sought to be partitioned is now to be disposed of in the event that we determine that complainant is entitled to have partition of the property.

## DISCUSSION.

It is a significant fact that upon the original hearing Mrs. Parker, who at the rehearing testified to the most material fact now involved, that of her mother's knowledge of the nature of her title and of her rights as tenant by entireties, did not refer to such knowledge. It is also significant that Mrs. McElfresh, who at the rehearing testified to detailed knowledge on the part of Mrs. Flynn with regard to her title, which, if believed, would put an end to complainant's rights in this proceeding, did not at the original hearing give any such testimony, although she was examined at length and was a most willing witness.

In the instances of the testimony of Mrs. Parker, who was but seven years of age at the time she heard Mr. Jones describe to her mother the nature of the title she was acquiring, we are asked to believe that a child of such tender years would have sufficient intelligence and mental acuteness not only to comprehend the nature of the title and the details of a technical presentation of it by Mr. Jones, but to remember all these facts and to be able to testify clearly upon them thirty-one years afterwards. This witness specifically says that she recalls the conversation, and narrates it as follows: "I know when the property was bought that Mr. Jones explained to her, and I heard her explain to my father, that if it

was in both names, neither one would have to make a will at the death of the other, and it would go direct. ......He explained to her the fact that if she had it made in her husband's name, that on his death she would need a will and otherwise would only get a third of the property, the widow's rights, in case there was any children; and if she had the title made in both names it would go direct to the one that survived."

Yet this witness upon the original hearing gave the testimony on which the court based its eighteenth finding of fact. As indicated by that finding, Mrs. Parker then testified: "Q.—What did your mother say to him with regard to how he should make his will? A.—Well, she said she knew my brother did not do what was right and she did not want him to come in and claim an equal share with her and I in the will."

She also testified: "Q.—What did she say about what you would have? A.—Of course, she says, 'if he would come in, where do you or I get our share? What would keep me?' "

It is true Mrs. McElfresh swears to the full knowledge of Mrs. Flynn as to her rights and title, but when the daughter, who would be reasonably supposed to know the most about it, presents positive proof as above, that the mother did not know her rights, it is asking too much under all the circumstances to give credit to Mrs. McElfresh's story upon the subject.

So with regard to Mrs. McCoy's testimony. This witness was very specific and had full recollection as to the identical facts which she was called upon to establish, but was uncertain and had to refer to Mrs. Parker as to where she, the witness, lived at the date that she was called upon to go to wait upon Mrs. Flynn at the home of the latter. Not only is it apparent that she did not have any recollection of material facts which she claims she had, but it is also true that the mother, Mrs. Flynn, was so afflicted that she could make herself understood

to but few persons, and that with great difficulty. Yet Mrs. McCoy would have us believe that she could express herself intelligently and consecutively, and that in her frequent conversations with Mrs. Flynn she obtained the knowledge of the facts of which she now speaks.

We are convinced that the findings of fact and conclusions of law upon which we based our original opinion in this case should not be changed in any material matter, and that nothing has been shown on behalf of the respondents which would warrant us in overthrowing our former judgment upon this case.

So far as the question of the rentals derived from the property is concerned, the amount of such rentals, and the amount to be awarded in the event of a decree in favor of the complainant has been determined by a stipulation between the parties. The only question left open for discussion as to such rentals is whether or not Mrs. Parker should be entitled to commission on the rentals as compensation for her services in connection with the matter.

While we are convinced that complainant is entitled to share in the estate with his sister, Mrs. Parker, and that every effort has been made by the latter to prevent complainant from obtaining his rights, yet as far as the actual administration of the property is concerned, she apparently has been faithful and efficient. We, therefore, do not assent to the proposition as presented by attorneys for complainant that Mrs. Parker should be deprived of all compensation.

### FINDINGS OF FACT.

The court hereby adopts as findings of fact pertinent to this cause upon rehearing, findings of fact filed September 4, 1914, numbered "First to Nineteenth," both inclusive, except Nos. "Fifteenth, Sixteenth and Seventeenth."

### NEW OR MODIFIED FINDINGS OF FACT.

First. In view of the testimony of Dr. Vaux upon rehearing that Catherine Flynn at and before the time of making the will in evidence was suffering from softening of the brain, original finding of fact "Fifteenth" is modified by adding thereto the following: She had mental power to understand her ordinary domestic and business affairs, but did not have power to grasp and understand the nature and character of her title as a tenant by entireties.

Second. The original "Sixteenth" finding of fact is supplemented by the following: When Catherine Flynn either importuned her husband to make a will, expressed herself as satisfied with it or apparently accepted its provisions, she did not understand the nature of her title or know and realize that, upon said husband's death, she would, if she survived, become the sole and absolute owner of the real estate involved in this case, to do with as she pleased without regard to the wishes or control of her husband or her son or daughter.

Third. The "Seventeenth" original finding of fact is supplied by the following: When Catherine Flynn apparently acquiesced in the provisions in her husband's will of a life estate to her in his personalty, she did not know the effect of the intestate laws or that she could, if she wished, take against his will.

Fourth. The total rents collected by respondent, Margaret Flynn Parker, from the real estate in which she and complainant are tenants in common was, up to May 25, 1915, $3,032, and the expenses during that time including $130.80 of commissions charged by said respondent, were $1,213.88, leaving a net balance of $1,818.12.

### CONCLUSIONS OF LAW.

The court hereby adopts conclusions of law numbered "First" to "Sixth," both inclusive, filed September 4,

1914, as being applicable to this case upon the rehearing.

### ADDITIONAL CONCLUSIONS OF LAW.

First. That Margaret Flynn Parker must account to her cotenant, the complainant, for his one-half of the net revenues derived from the real estate described in the bill of complainant.

Second. That, as the net amount of such income, up to May 25, 1915, was $1,818.12, complainant is entitled to a decree that said Margaret Flynn Parker shall pay to him as his share thereof the sum of $909.06 with interest.

### OPINION.

Our reasons for the present disposition of this case sufficiently appear in the "Statement," "Discussion," "Findings of Fact" and "Conclusions of Law" hereinbefore fully set forth.

If Catherine Flynn had the full and intelligent knowledge and understanding of her rights which the authorities require, before she or her heirs can be estopped from claiming against the will of a third person, seeking to dispose of her estate, then the complainant is not entitled to partition.

We cannot, notwithstanding the testimony of Mrs. Parker, Mrs. McElfresh and Mrs. McCoy, say that such knowledge existed.

Dr. Vaux's testimony on the rehearing that Mrs. Flynn was suffering from softening of the brain, and her undoubted difficulty of speech and hysterical condition, warrant us in concluding that if she had at one time known the nature of her title, she did not possess such intelligent understanding and appreciation of its nature and the effect of her husband's will as would sweep away her own property and disinherit her only son.

We are convinced that complainant is entitled to par-

tition and an accounting of the rents and profits of the property.

The court found that Eugene J. Flynn had a fee simple interest in one-half of the land, and that Margaret Flynn Parker had a fee simple interest in one-half of the land and directed that it be partitioned and that Margaret Flynn Parker pay plaintiff his share of the net revenue received therefrom.    Margaret Flynn Parker and Edward C. Parker appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*F. C. McGirr*, for appellants.

*H. S. McKinley*, with him *Edwin Logan*, for appellee.

PER CURIAM, January 8, 1917:

This decree is affirmed, at the costs of the appellants, on the facts found on the hearing and rehearing of the case and on the legal conclusions which correctly followed them.

---

# Warton's Estate.

*Wills—Undue influence—Insufficient evidence.*

A petition for an issue devisavit vel non alleging that undue influence was used to obtain the execution of a will was properly refused, where it appeared that testatrix employed a lawyer to advise her in the making of her will and to draft it for her; that she visited his office and told him how she desired to dispose of her estate; that he took memoranda and from these prepared the will in accordance with her request; that she executed the will at the office of her family physician, who was a reputable man, in the presence of said physician and her counsel, and no one else; that she was in good physical and mental condition at the time and retained possession of the will for almost three years previous to her death during which period she could have destroyed it at any time.